## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER PINADELLA <br> 1310 Hudson Street, Apt. 3F <br> Hoboken, NJ 07030 <br><br> Plaintiff, <br> v. <br><br> AMPLITY HEALTH/AMPLITY, LLC <br> 2080 Cabot Blvd. West, Ste. 100 <br> Langhorne, PA 19047 <br> and <br> SCYNEXIS, INC. <br> 1 Evertrust Plaza <br> Jersey City, NJ 07302 <br><br> Defendants. | CIVIL ACTION <br><br> DOCKET NO.: <br><br><br><br> **JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Christopher Pinadella (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Amplity Health/ Amplity LLC and Scynexis, Inc. (*hereinafter* collectively referred to as "Defendants") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.) and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that he was discriminated against and unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under laws of the United States and seeks

redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the District of New Jersey.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Amplity Health/ Amplity LLC (*hereinafter* "Defendant Amplity"), is a provider of pharmaceutical contract commercial services intended to serve pharmaceutical, biotechnology, medical device and diagnostics companies. Defendant Amplity offers customized, live channel healthcare sales, communication, commercialization, remote engagement, consulting and related

clinical services through a range of pharmaceutical brands. Defendant Amplity has extensive U.S. and worldwide operations.

8. Scynexis, Inc. (*hereinafter* "Defendant Scynexis) is a pharmaceutical company specializing in anti-infective treatments located at the above-captioned address.

9. Although Plaintiff was hired through Defendant Amplity, Plaintiff and his team members were contracted to work for Defendant Scynexis (a customer of Defendant Amplity) on the Scynexis drug Brexafemme. Plaintiff was treated in all functional respects like an employee while working with Defendant Scynexis. Defendant Amplity's business model is to put together a sales team (that is basically outsourced), which is turn contracted to third parties such as Defendant Scynexis (and who work as a functional sales team of Defendant Scynexis). Defendant Scynexis' management had the ability to manage Plaintiff, give directive to Plaintiff, and make decisions regarding Plaintiff's employment (including termination). Plaintiff was obligated to follow the policies of Defendant Scynexis. Thus, for the foregoing reasons, Defendants may be treated as a single and/or joint employer for purposes of the instant action during the relevant time period of December of 2014 through June of 2016.

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was employed by Defendant Amplity as a Field Sales Representative (Women's Healthcare Specialist) from on or about July 19, 2021 until his unlawful termination (discussed further *infra*) on or about September 21, 2021.

13. Plaintiff was a remote employee working full-time out of his residence in New Jersey.

14. Plaintiff was primarily supervised by Defendant Amplity's high-level sales managers, Gina Polio and Brian Scott.

15. Throughout his employment with Defendants, Plaintiff was a hard-working employee who performed his job well. I fact, in the one performance evaluation Plaintiff received during his short tenure, Plaintiff was rated as meeting expectations.

16. In close proximity to Plaintiff's termination, Plaintiff disclosed serious health problems to Defendant Amplity's management. In particular, Plaintiff informed management that he was being screened for cancer / leukemia, testing for cancer, and likely to be diagnosed with cancer based on the preliminary assessments of his physicians.

17. During this time, Plaintiff was having significant health complications, such as nausea, dizziness, confusion, weakness, fatigue, and other symptoms, all of which he shared with his management.

18. As a result of the foregoing, Plaintiff requested medical accommodations. Such accommodations included but were not limited to: (a) requesting that in light of Plaintiff being potentially immunocompromised, that any individual riding with Plaintiff be vaccinated for COVID-19; (b) that Plaintiff be permitted to socially distance because the potential contraction of COVID-19 could be deadly to Plaintiff in light of his ongoing health complications; and (c)

indicating a need for periodic medical appointments (as Plaintiff worked morning, day and night in his role and there was virtually no time available to schedule the needed medical appointments).

19. Plaintiff's disclosures of health needs and accommodations started in approximately August 2021.

20. Plaintiff was diagnosed with very serious health problems that are long-term. Such diagnoses include Anemia (lack of health blood cells to supply sufficient body oxygen) and Thrombocytopenia (low blood platelets). Plaintiff's symptoms and blood-cell problems were typical tell-tail signs of Leukemia and cancer. Plaintiff continues to treat and have complications. Defendants were fully apprised about Plaintiff's health problems, diagnoses, and likelihood of having cancer.

21. Defendants' sales departments were high-pressure environment where there is little tolerance for anything that could draw attention away from maximum revenue or sales generation, including needing to take time off for medical/health reasons.

22. Following Plaintiff's disclosure of his health issues and need for accommodations, Defendants' management subjected Plaintiff to extreme hostility.

23. For example, but not intended to be an exhaustive list, Defendants' management began to intensely scrutinize anything Plaintiff did, question Plaintiff about all aspects of his role, implied that Plaintiff would not work as hard (due to Plaintiff's ongoing health situation), and created a very awkward and uncomfortable environment for Plaintiff's last approximate month of employment in direct response to Plaintiff's disclosure of his health issues and need for accommodation.

24. There was a clear perception that Plaintiff's perceived illness and complications could compromise Plaintiff's work ethic or goal attainment. In fact, Polio directly informed

Plaintiff that Plaintiff being "a headache" in the workplace in one conversation in which Plaintiff was discussing his health issues and need for accommodations. Plaintiff found this and other commentary from management to be discriminatory, intolerant, and offensive.

25. On or about September 21, 2021, in the same timeframe that Plaintiff was discussing his health issues and need for accommodations, Plaintiff was abruptly terminated by Defendants for allegedly exhibiting a negative attitude in chat messages with employees on his team.

26. Defendants' purported reason for Plaintiff's termination is completely false and pretextual. Specifically, Polio had suggested to Plaintiff and his team that everyone start a private group chat and discuss anything that bothered them or about work privately.

27. Plaintiff was one of approximately a dozen team members who commented on concerns in the workplace (such as people losing their jobs and worry about job stability). However, Plaintiff was singled out for termination despite that the entire team engaged in workplace commentary, much of which was *far more negative* than anything Plaintiff could have stated. It is simply outrageous and absurd that Plaintiff was terminated for participating in a team chat as suggested by management (which was totally private) and despite that virtually everyone did the same thing Plaintiff did per management's suggestion (wherein other comparators were not terminated for more severe negative dialogue).

28. Plaintiff believes and therefore avers that he was terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; and/or (3) his requested accommodations.

## COUNT I
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff suffered from qualifying health conditions under the NJ LAD which affected his ability (at times) to perform some daily life activities.

31. Plaintiff kept Defendants' management informed of his serious medical conditions and need for medical treatment and other accommodations.

32. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable accommodations at times.

33. Plaintiff requested reasonable accommodations from Defendants as outlined in detail above.

34. Following Plaintiff's disclosure of his health issues and need for reasonable accommodations, Plaintiff was subjected to direct hostility and discriminatory statements, including being called a "headache" in the workplace connection to Plaintiff's disclosure.

35. Plaintiff was abruptly terminated from his employment with Defendants in close proximity to the disclosure of his health conditions and requests for reasonable accommodations. Defendants' stated reason for Plaintiff's termination was completely pretextual and false (allegedly making negative statements). Moreover, non-disabled employees who have not requested reasonable accommodations were not terminated even though they engaged in far more negative commentary than Plaintiff.

36. Plaintiff believes and therefore avers that he was terminated from his employment with Defendants because of: (1) his known and/or perceived health problems; (2) his record of impairment; and/or (3) his requested accommodations.

37. aforesaid constitute violations of the NJ LAD.

## COUNT II
### Violation of the Americans with Disabilities Act, as amended (ADA)
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff properly exhausted his administrative remedies to proceed under the ADA because he timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and has received his Notice of Right to Sue.

40. Plaintiff hereby incorporates and re-asserts the foregoing allegations in Count I, as such actions also constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their

willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

  F. Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

  G. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

            Respectfully submitted,

            **KARPF, KARPF & CERUTTI, P.C.**

      By: _____
            Ari R. Karpf, Esquire
            3331 Street Road
            Two Greenwood Square
            Suite 128
            Bensalem, PA 19020
            (215) 639-0801

Dated: May 20, 2020